FILED

1  JEFFREY F. KELLER (SBN 148005)
2  jfkeller@kellergrover.com
   KATHLEEN R. SCANLAN (SBN 197529)
3  kscanlan@kellergrover.com
   **KELLER GROVER, LLP**
4  1965 Market Street
5  San Francisco, California 94103
   Telephone: (415) 543-1305
6  Facsimile: (415) 543-7861

2016 FEB -5  PM 1:09

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
LOS ANGELES
BY:_____

7
8  JULIE BRACKER (GA Bar No 073803)        BRANDON HORNSBY
   Julie@Fcacounsel.com                     (GA Bar No. 367680)
9  JASON MARCUS (GA Bar No 949698)         BH@Hornsbylaw.com
   jason@fcacounsel.com                    **HORNSBY LAW GROUP**
10 **BRACKER & MARCUS LLC**                118 W. Peachtree St. NW #2220
11 3225 Shallowford Road, Ste 1120        Atlanta, GA 30309
   Marietta, GA 30062                      Telephone: (404) 577-1505
12 Telephone: (770) 988-5035              Facsimile: (404) 577-1565
13 Facsimile: (678) 648-5544

14 Attorneys for Relator

15         **UNITED STATES DISTRICT COURT**
16         **CENTRAL DISTRICT OF CALIFORNIA**
17              **WESTERN DIVISION**
18 [UNDER SEAL]                Case No. **CV16-00835**SVW(RAOx)
19
20            Plaintiff[s],       _FILED IN CAMERA AND_
                                   _UNDER SEAL PURSUANT TO_
21    v.                          _31 U.S.C. § 3730 (b)_
22
23 [UNDER SEAL]                **COMPLAINT FOR VIOLATIONS
                               OF THE FEDERAL
24                             FALSE CLAIMS ACT**
25            Defendant[s].     **JURY TRIAL DEMANDED**
26
27                             **DO NOT ENTER ON PACER
                               DO NOT PLACE IN PRESS BOX**
28

COMPLAINT                                        CASE NO:





1   JEFFREY F. KELLER (SBN 148005)
2   jfkeller@kellergrover.com
    KATHLEEN R. SCANLAN (SBN 197529)
3   kscanlan@kellergrover.com
    **KELLER GROVER, LLP**
4   1965 Market Street
5   San Francisco, California 94103
    Telephone: (415) 543-1305
6   Facsimile: (415) 543-7861

7
    JULIE BRACKER (GA Bar No 073803)              BRANDON HORNSBY
8   Julie@Fcacounsel.com                            (GA Bar No. 367680)
    JASON MARCUS (GA Bar No 949698)              BH@Hornsbylaw.com
9   jason@fcacounsel.com                          **HORNSBY LAW GROUP**
10  **BRACKER & MARCUS LLC**                      118 W. Peachtree St. NW #2220
    3225 Shallowford Road, Ste 1120              Atlanta, GA 30309
11  Marietta, GA 30062                           Telephone: (404) 577-1505
12  Telephone: (770) 988-5035                    Facsimile: (404) 577-1565
    Facsimile: (678) 648-5544
13

14  Attorneys for Relator

15              **UNITED STATES DISTRICT COURT**

16             **CENTRAL DISTRICT OF CALIFORNIA**

17                    **WESTERN DIVISION**

18  [UNDER SEAL]                   Case No.: **CV16-00835** SVW(RAOx)
19
20               Plaintiff[s],
21      v.                          *FILED IN CAMERA AND*
                                     *UNDER SEAL PURSUANT TO*
                                     *31 U.S.C. § 3730 (b)*
22
23  [UNDER SEAL]                    **COMPLAINT FOR VIOLATIONS**
                                    **OF THE FEDERAL**
24               Defendant[s].      **FALSE CLAIMS ACT**
25                                  **JURY TRIAL DEMANDED**
26
27                                  **DO NOT ENTER ON PACER**
                                    **DO NOT PLACE IN PRESS BOX**
28

    COMPLAINT                                     CASE NO:

1  JEFFREY F. KELLER (SBN 148005)
2  jfkeller@kellergrover.com
   KATHLEEN R. SCANLAN (SBN 197529)
3  kscanlan@kellergrover.com
4  **KELLER GROVER, LLP**
   1965 Market Street
5  San Francisco, California 94103
   Telephone: (415) 543-1305
6  Facsimile: (415) 543-7861
7
8  JULIE BRACKER (GA Bar No 073803)          BRANDON HORNSBY
   Julie@Fcacounsel.com                       (GA Bar No. 367680)
9  JASON MARCUS (GA Bar No 949698)           BH@Hornsbylaw.com
   jason@fcacounsel.com                      **HORNSBY LAW GROUP**
10 **BRACKER & MARCUS LLC**                  118 W. Peachtree St. NW #2220
11 3225 Shallowford Road, Ste 1120          Atlanta, GA 30309
   Marietta, GA 30062                         Telephone: (404) 577-1505
12 Telephone: (770) 988-5035                  Facsimile: (404) 577-1565
13 Facsimile: (678) 648-5544
14
15 Attorneys for Relator
   Llorens Pembrook
16                    **UNITED STATES DISTRICT COURT**
17                    **CENTRAL DISTRICT OF CALIFORNIA**
18                          **WESTERN DIVISION**
19 UNITED STATES OF AMERICA *ex*     | Case No.:
   *rel* LLORENS PEMBROOK,           |
20                                    | *FILED IN CAMERA AND*
              Plaintiff-Relator       | *UNDER SEAL PURSUANT TO*
21                                    | *31 U.S.C. § 3730 (b)*
       v.                             |
22                                    |
   PROVIDENCE HEALTH &                | **COMPLAINT FOR VIOLATIONS**
23 SERVICES, PROVIDENCE              | **OF THE FEDERAL**
   TARZANA MEDICAL CENTER,           | **FALSE CLAIMS ACT**
24 PROVIDENCE HOLY CROSS             |
   MEDICAL CENTER, PROVIDENCE        | **JURY TRIAL DEMANDED**
25 LITTLE COMPANY OF MARY            |
   MEDICAL CENTER TORRANCE,          | **DO NOT ENTER ON PACER**
26                                    | **DO NOT PLACE IN PRESS BOX**
27 PROVIDENCE SAINT JOHN'S           |
   HEALTH CENTER, PROVIDENCE         |
28 SAINT JOSEPH MEDICAL CENTER,      |

*(left margin, vertical text)* KELLER GROVER LLP   1965 Market Street, San Francisco, CA 94103   Tel. 415.543.1305; Fax 415.543.7861

COMPLAINT                                              CASE NO:

PROVIDENCE TRINITYCARE
HOSPICE - CERRITOS,
PROVIDENCE TRINITYCARE
HOSPICE – TORRANCE,
PROVIDENCE TRINITYKIDS CARE,
PROVIDENCE HEALTH &
SERVICES –OREGON, PROVIDENCE
HOOD RIVER MEMORIAL
HOSPITAL, PROVIDENCE
MEDFORD MEDICAL CENTER,
PROVIDENCE MILWAUKIE
HOSPITAL, PROVIDENCE
NEWBERG MEDICAL CENTER,
PROVIDENCE PORTLAND
MEDICAL CENTER, PROVIDENCE
SEASIDE HOSPITAL, PROVIDENCE
ST. VINCENT MEDICAL CENTER,
PROVIDENCE WILLAMETTE FALLS
MEDICAL CENTER, BENEDICTINE
HOSPICE, PROVIDENCE HOSPICE –
MEDFORD, PROVIDENCE HOSPICE
– HOOD RIVER, PROVIDENCE
HOSPICE –PORTLAND,
PROVIDENCE HEALTH &
SERVICES - WASHINGTON,
PROVIDENCE CENTRALIA
HOSPITAL, PROVIDENCE ST.
JOSEPH'S HOSPITAL, PROVIDENCE
MOUNT CARMEL HOSPITAL,
        PROVIDENCE REGIONAL
MEDICAL CENTER COLBY
CAMPUS, PROVIDENCE ST. PETER
HOSPITAL, PROVIDENCE HOLY
FAMILY HOSPITAL, PROVIDENCE
SACRED HEART CHILDREN'S
HOSPITAL, PROVIDENCE SACRED
HEART MEDICAL CENTER,
PROVIDENCE ST. MARY MEDICAL
CENTER, SOUNDHOMECARE AND
HOSPICE, HOSPICE OF SEATTLE
PALLIATIVE CARE, HOSPICE AND

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305; Fax 415.543.7861

COMPLAINT                                                        CASE NO:

HOME CARE OF SNOHOMISH
COUNTY, PROVIDENCE HEALTH
& SERVICES - MONTANA, ST.
PATRICK HOSPITAL, PROVIDENCE
ST. JOSEPH MEDICAL CENTER,
PROVIDENCE HEALTH SYSTEM -
SOUTHERN CALIFORNIA,
PROVIDENCE TRINITYCARE
HOSPICE,

        Defendants.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT

CASE NO:

Relator Llorens Pembrook, on behalf of himself and the United States of America, brings this action and shows the following:

## JURISDICTION AND VENUE

1.    This action arises under the Federal False Claims Act, as amended, 31 U.S.C. §§ 3729 *et seq.*

2.    This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 3732(a), 31 U.S.C. § 3732(b), and 28 U.S.C. § 1331.

3.    This court has personal jurisdiction over Defendants and is a proper venue pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1931(b) in that Defendants do or transact business in this jurisdiction and the violations of the False Claims Act described herein were carried out in this district.

## PARTIES TO THE ACTION

4.    Providence Health & Services ("Providence") is the third largest not-for-profit health system in the United States, operating 34 hospitals, 475 physician clinics, 22 long-term care facilities, and 19 hospice and home health programs across Alaska, California, Montana, Oregon, and Washington.

5.    Providence serves over 7,000 people in home health and palliative care programs on a daily basis.

6.    Providence Tarzana Medical Center; Providence Holy Cross Medical Center; Providence Little Company of Mary Medical Center Torrance; Providence Saint John's Health Center; Providence Saint Joseph Medical Center; Providence TrinityCare Hospice – Cerritos; Providence TrintyCare Hospice – Torrance; Providence TrinityKids Care; Providence Health & Services - Oregon; Providence Hood River Memorial Hospital; Providence Medford Medical Center; Providence Milwaukie Hospital; Providence Newberg Medical Center; Providence Portland Medical Center; Providence Seaside Hospital; Providence St. Vincent Medical Center; Providence Willamette Falls Medical Center; Benedictine Hospice; Providence Hospice - Medford; Providence Hospice - Hood River; Providence

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

COMPLAINT                                          1                                          CASE NO:

Hospice - Portland; Providence Health & Services - Washington; Providence Centralia Hospital; Providence St. Joseph's Hospital; Providence Mount Carmel Hospital; Providence Regional Medical Center Colby Campus; Providence St. Peter Hospital; Providence Holy Family Hospital; Providence Sacred Heart Children's Hospital; Providence Sacred Heart Medical Center; Providence St. Mary Medical Center; Soundhomecare and Hospice; Hospice of Seattle Palliative Care; Hospice and Home Care of Snohomish County; Providence Health & Services - Montana; St. Patrick Hospital; Providence St. Joseph Medical Center; Providence Health System - Southern California; and Providence TrinityCare Hospice are Providence-owned locations offering palliative care services.

7.      Providence Tarzana Medical Center ("Tarzana") is a 245-bed facility purchased by Providence Health & Services in July 2008.

8.      Tarzana has an average daily census of 173 patients. Usually approximately 5-10 patients are on palliative care at a time, and approximately 80%-90% of those patients are Medicare beneficiaries, with the remainder as private insurance.

9.      Providence TrinityCare Hospice ("TrinityCare") provides a full range of palliative care and hospice care to patients nearing the end of life, including those at Providence Tarzana Medical Center.

10.      Qui tam Relator Llorens Pembrook ("Relator" or "Dr. Pembrook") is a citizen and resident of the State of California and brings this action on behalf of the United States of America.

11.      Dr. Pembrook has worked in the medical profession since graduating from the University of California at Davis School of Medicine in 1976.

12.      Dr. Pembrook has designed and operated palliative care units since 1995, including as Director of a start-up independent palliative unit from 1995-2005 and Medical Director for Inpatient Hospice and Palliative Care for Sherman Oaks Hospital from 2003-2006.

13.      In 2009 he was recruited by Providence Tarzana Medical Center's then CEO

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

1    Dale Surowitz and then CMO Glenn Irani to create and manage its first palliative

2    care unit—as part of a system-wide push by Providence—which he did as an

3    independent contractor until he was constructively discharged on June 19, 2014.

4    14.    In this role, Dr. Pembrook was responsible for developing all of the

5    palliative care protocols at the hospital and was the palliative care representative on

6    the hospital committees.

7    **THE MEDICARE PROGRAM**

8    15.    Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.,* establishes

9    the Health Insurance for the Aged and Disabled Program, popularly known as the

10    Medicare program. The Secretary of Health and Human Services ("HHS")

11    administers the Medicare Program through the Centers for Medicare and Medicaid

12    Services ("CMS").

13    16.    The Medicare program is comprised of four parts. Medicare Part A

14    ("Hospital Insurance") provides basic insurance for the costs of hospitalization and

15    post hospitalization care. 42 U.S.C. §§ 1395c-i-5. Medicare Part B ("Medical

16    Insurance") is a federally subsidized, voluntary insurance program that covers the

17    fee schedule amount for doctors' services, outpatient care, medical supplies, and

18    laboratory services, including facility dialysis treatments. 42 U.S.C. §§ 1395j-w-5.

19    Medicare Part C ("Medicare Advantage Plans") is a plan offered by private

20    insurers that contract with Medicare to provide Part A and Part B benefits. 42

21    U.S.C. §§ 1395w-21-w-28. Medicare Part D ("Prescription Drug Coverage") is a

22    plan offered by private insurers approved by Medicare to provide basic insurance

23    for prescription drugs. 42 U.S.C. §§ 1395w-101-w-154.

24    17.    Reimbursement for Medicare Part A claims is made by the United States

25    through CMS. Hospitals submit Medicare Part A claims directly to CMS, which in

26    turn makes a standard, bundled payment based on a DRG diagnostic code.

27    18.    Reimbursement for Medicare Part B claims is made by the United States

28    through CMS. CMS, in turn, contracts with fiscal intermediaries to administer and

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

pay Medicare Part B claims from the Medicare Trust Fund. 42 U.S.C. § 1395(u). In this capacity, the fiscal intermediaries act on behalf of CMS. 42 C.F.R. § 421.5(b). Separate payments are made for each CPT procedural code listed on the Medicare Part B claims.

19.     Reimbursement for Medicare Part C claims is made by the United States through CMS. CMS makes fixed monthly payments to each Medicare Choice organization for each enrolled individual, i.e., a capitated payment.

20.     Reimbursement for Medicare Part D claims is made by the United States through CMS. CMS reimburses the insurance plans for a percentage of its payments for prescription drugs.

21.     In order to receive Medicare funds, enrolled providers, including Defendants, together with their authorized agents, employees, and contractors, are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and all applicable policies and procedures issued by the states.

22.     Among the rules and regulations which enrolled providers, including Defendants, agree to follow are to: (a) bill Medicare for only those covered services which are medically necessary; (b) not bill Medicare for any services or items which were not performed or delivered in accordance with all applicable policies, nor submit false or inaccurate information relating to provider costs or services; (c) not engage in any act or omission that constitutes or results in over-utilization of services; (d) comply with state and federal statutes, policies and regulations applicable to the Medicare Program; and (e) not engage in any illegal activities related to the furnishing of services to recipients.

## FRAUDULENT SCHEME

23.     Palliative care is a medical specialty that helps patients and their families live as fully as possible when faced with a life-threatening illness. Palliative care services may be provided during any phase of an illness, including active

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

COMPLAINT                                4                          CASE NO:

treatments such as chemotherapy. It addresses physical, intellectual, emotional, social, and spiritual needs and facilitates patient autonomy, access to information, and choice.

24.     The majority of palliative care patients at Tarzana were end-of-life, mostly suffering from terminal cancer.

25.     When a Medicare beneficiary is admitted to the hospital, they are assigned a DRG code, depending on their diagnosis. A DRG, or diagnostic related grouping, is how Medicare categorizes hospitalization costs and determines how much to pay for a patient's hospital stay. Rather than paying the hospital for an itemized list of procedures, medications, and supplies, Medicare pays the hospital a fixed amount based on the patient's DRG.

26.     If the cost of treating the patient is less than the DRG reimbursement amount, the hospital makes a profit. If the patient costs more than the DRG pays, however, the hospital loses money on that patient.

27.     Thus the DRG payment structure incentivizes hospitals such as Providence Tarzana Medical Center to treat and discharge patients as quickly and efficiently as possible.

28.     Since at least 2012, the administrators at Tarzana have exerted a great deal of pressure on the case managers and discharge planners to discharge patients to their homes or to skilled nursing facilities as soon as they are able.

29.     The palliative care team is a valuable resource for the hospital, as it has been found to considerably speed up discharges through education, compassion, and assisting the patients and their families.

30.     General Inpatient Care (GIP) is a level of hospice care intended for a patient for whom pain control or symptom management cannot be managed by the regular hospital staff. *See* 42 C.F.R. § 418.302(b)(4); *see also* Medicare Benefit Policy Manual, Chapter 9, § 40.1.5.

31.     GIP care is intended to be short-term care only. *See* 42 C.F.R. § 418.302(f)

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

1    (capping payment for respite/GIP).

2    32.    Assigning a patient to GIP requires the hospital staff to certify that it lacks

3    the capability to properly manage the patient's pain or symptoms and so requires

4    outside assistances.

5    33.    Whereas the hospital is normally limited to the DRG payment, regardless of

6    what treatments are required, once a patient is assigned to GIP, it can submit claims

7    for payment to Medicare for the provision of GIP services.

8    34.    The payment rate for GIP varies by year and location, but, for example, the

9    unadjusted daily Medicare GIP rate for FY 2011 was $652.27 per day.

10   35.    For those patients whom Tarzana had difficulty discharging, administrators,

11   individually and by and through discharge planners and case managers, pressured

12   Dr. Pembrook and the palliative care service to assign the patients to GIP.

13   36.    Dr. Pembrook and his staff constantly heard from administrators that patients

14   needed to be assigned to GIP to "get them off the hospital books."

15   37.    When a patient has been assigned to GIP at Tarzana or other Providence

16   facilities, contractors from TrinityCare take over the patient's care until the

17   pain/symptoms subside.

18   38.    Providence owns the GIP provider, TrinityCare, and so assigning patients to

19   GIP constitutes a windfall for Providence.

20   39.    To the best of Dr. Pembrook's recollection, there was not a single patient

21   under his watch at Tarzana whose symptoms were out of control, thereby

22   necessitating GIP.

23   40.    All of Tarzana's patient assignments to GIP were medically unnecessary and

24   unreasonable in the professional judgment of Dr. Pembrook, who was responsible

25   for the palliative care of these patients.

26   41.    In fact, on one occasion, Tarzana assigned a patient to GIP without Dr.

27   Pembrook's knowledge or consent, and by the time TrinityCare arrived, he had

28   already resolved the patient's symptoms. TrinityCare stayed around to fill out the

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

paperwork and provide support, and this patient was billed to Medicare for GIP.

42.     Since TrinityCare is owned and operated by Providence, it never decides that a patient is ineligible for GIP, participates in the fraud by keeping the patients on GIP for long periods, and Providence reaps all the profits of assigning a patient to GIP.

43.     In fact, TrinityCare's Regional Palliative Care Director, Dr. Glenn Komatsu, signs the certifications for GIP without ever even seeing the patients.

44.     During the time the patient is on GIP, the hospital is able to continue working on finding a place to discharge these patients, while being reimbursed for their care.

45.     If the hospital is unable to safely discharge the patient at the end of their GIP period, they are unsafely discharged to their homes or SNFs.

46.     Dr. Pembrook cannot recall a single instance at Tarzana where a patient was placed back into standard care after GIP.

47.     Because the hospitalists group at Tarzana is underwritten by the hospital, and they are facing similar pressures to open up beds for new, paying patients, they readily sign off on these discharges.

48.     The unsafe discharges of very sick patients became a point of contention between Dr. Pembrook and the hospital administration.

49.     On a near daily basis, Dr. Pembrook and the palliative care nurses faced a barrage of pressure to assign patients to GIP, and off the hospital's books.

50.     Not only did case managers and discharge planners pressure him—as they were forced to do by the administration—but when Dr. Pembrook refused to assign patients to GIP when it was medically unreasonable and unnecessary, pressure also came from CEO (Jerry Clute), CMO (Glen Irani), CNO/COO Phyllis Bushart, and the Risk Management department.

51.     For two straight years, Dr. Pembrook had regular meetings and communications with the hospital administrators (some at his request), in which he

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

1   explained his concerns with unsafe discharges and the strict criteria for GIP.

2   52.    Dr. Pembrook can recall having requested, and held, at least two meetings

3   with then CEO Jerry Clute.

4   53.    Dr. Pembrook's concerns fell on deaf ears, however, and the administration

5   became more intent on increasing the number of patients in GIP.

6   54.    In fact, in one meeting, CEO Clute exclaimed "there must be some way to

7   get around Medicare criteria for GIP."

8   55.    On at least one occasion, CEO Clute requested that Dr. Pembrook decline to

9   administer or take patients off of pain management and comfort medications at end

10   of life so that they would qualify for GIP.

11   56.    Dr. Pembrook, of course, refused.

12   57.    In a subcommittee meeting, CMO Irani told Dr. Pembrook, in front of

13   approximately ten other committee members, to go along with the administration's

14   demands or "get out."

15   58.    Palliative Care Nurse Laura Fairley and Tarzana Chief of Staff Alina Lopo

16   also complained in committee meetings about patients being unsafely discharged

17   to their homes.

18   59.    When Tarzana patients were to be admitted to GIP, the orders in the

19   patient's charts indicated that the nurses and/or social workers were to call Dr.

20   Glenn Komatsu, TrinityCare Regional Palliative Care Director, and not Dr.

21   Pembrook, notwithstanding that Dr. Komatsu had no direct involvement with the

22   patients or their families, and so was in no position to make any medical

23   determinations.

24   60.    Dr. Komatsu signed the certifications that the patients qualified for GIP.

25   61.    Dr. Pembrook had to monitor the patient charts daily to ensure that Dr.

26   Komatsu, who again had no actual involvement with the patient, had not prescribed

27   a dangerous course of treatment.

28   62.    Dr. Pembrook argued constantly to hospital administrators that this was bad

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

COMPLAINT                              8                              CASE NO:

1  medicine, having the orders of an off-site doctor supersede the doctor on-site, but

2  he was ignored.

3  63.    In or about early spring 2014, Dr. Pembrook's right-hand woman, Palliative

4  Care Nurse Laura Fairley, resigned.

5  64.    She had stood by Dr. Pembrook on his decisions not to assign patients to

6  GIP and had faced similar acts of retaliation.

7  65.    The hospital changed her hours with no explanation, making it impossible

8  for her to keep her position.

9  66.    Although Nurse Fairley was an integral part of the Palliative Care Service,

10  including handling all of the service's statistical data and scheduling meetings with

11  the patients' families, the administration made no moves to replace her.

12  67.    Dr. Pembrook met with CEO Clute and CNO Bushart to discuss the

13  necessity of hiring a new Palliative Care Nurse, but she still was not replaced.

14  68.    Dr. Pembrook was now running the entire palliative care service almost

15  entirely by himself, which was unsustainable.

16  69.    In or about late spring 2014, approximately eighteen months before Dr.

17  Pembrook's contract would expire, CMO Irani began to look for his replacement.

18  70.    Dr. Pembrook learned from the hospital Chief of Staff that CMO Irani had

19  been conducting interviews for Dr. Pembrook's replacement while he was on

20  vacation.

21  71.    From that point on, the administration made Dr. Pembrook's life miserable

22  in an effort to push him out.

23  72.    Dr. Pembrook was also excluded from the GIP decision-making process for

24  his patients; instead, the hospital contracted with independent consultants to give

25  their opinions as to whether the patients qualified for GIP, and did not tell Dr.

26  Pembrook—Medical Director for the Palliative Care Service—that these

27  consultations were taking place.

28  73.    Dr. Pembrook requested a meeting with all of the administrators regarding

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

1   the impropriety of his being excluded from decisions regarding the care of his own
2   patients, but received no relief.

3   74.   There were additional instances of retaliation as well. For example, for each
4   of the three months leading up to his constructive discharge, the hospital delayed
5   his monthly stipend by approximately two weeks.

6   75.   Another example, the nursing staff accused him of "euthanizing patients"
7   and nothing was done about it.

8   76.   Yet another example, in the first quarter of 2014, the California Board of
9   Medical Quality Assurance opened an investigation on his prescribing practices.
10   This is the only review the Board had performed on Dr. Pembrook in his thirty-
11   five years of practicing medicine, and, upon information and belief, it was
12   instigated by the administration at Tarzana.

13   77.   On June 18, 2014, CEO Clute met with Dr. Pembrook and told him that
14   someone "higher up" in Providence's regional administration was coming to the
15   hospital to "oversee him."

16   78.   This was the final straw of a long series of retaliatory actions and hostile
17   work environment created by Providence and Tarzana—including removing him
18   from the decision-making process for his own patients, declining to give him the
19   necessary support staff, interviewing his replacement while he still had over a year
20   on his contract, verbally abusing and ostracizing him, and now assigning him a
21   corporate supervisor—resulting in Dr. Pembrook's constructive termination on
22   June 19, 2014.

23   79.   Upon information and belief, what Dr. Pembrook experienced firsthand has
24   occurred across the entire Providence system, including but not limited to hospitals,
25   hospices, and longterm care facilities (which, by billing patients as GIP, recover
26   approximately three times as much as for routine care).

27   80.   This belief is based on Dr. Pembrook's own personal experience and
28   understanding of how Tarzana was operated, and that orders and decisions

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

1  including but not limited to the creation and supervision of the palliative care

2  programs, replacement of Tarzana hospital administrators, and pressures to move

3  patients to GIP to increase profits, were made by Providence on a corporate level.

4

## COUNT I

### Violation of 31 U.S.C. § 3729 – Federal False Claims Act

8  81.    Relator incorporates and realleges herein all other paragraphs as if fully set

9  forth herein.

10 82.    As set forth above, Defendants, individually and by and through their agents,

11 officers, and employees, knowingly presented or caused to be presented numerous

12 false or fraudulent claims for payment or approval, in violation of the False Claims

13 Act, 31 U.S.C. § 3729(a)(1)(A).

14 83.    As set forth above, Defendants, individually and by and through their

15 agents, officers, and employees, knowingly made, used, or caused to be made or

16 used, false records or statements material to numerous false claims, in violation of

17 the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

18 84.    As set forth above, Defendants conspired to commit a violation of the False

19 Claims Act, in violation of 31 U.S.C. § 3729(a)(1)(C).

20 85.    Due to Defendants' conduct, the United States Government has suffered

21 substantial monetary damages.

22 86.    The United States is entitled to treble damages based upon the amount of

23 damage sustained by the United States as a result of the aforementioned violations

24 of the Federal False Claims Act, 31 U.S.C §§ 3729-3733, in an amount that will be

25 proven at trial.

26 87.    The United States is entitled to a civil penalty of between $5,500 and

27 $11,000 as required by 31 U.S.C. § 3729(a) for each of the fraudulent claims and

28 statements.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

COMPLAINT                                11                        CASE NO:

88.     Relator is also entitled to reasonable attorney's fees and costs, pursuant to 31 U.S.C. § 3730(d)(1).

## COUNT II

### Violation of 31 U.S.C. § 3730 – Retaliation

89.     Relator incorporates and realleges herein all other paragraphs as if fully set forth herein.

90.     Providence and Tarzana violated Relator Pembrook's rights pursuant to 31 U.S.C. § 3730(h) by retaliating against him for lawful acts done by him in furtherance of an action under the False Claims Act and other efforts to stop one or more violations of the False Claims Act, including but not limited to his constructive discharge.

91.     As a result of Defendants' actions, Relator Pembrook has suffered damages in an amount to be shown at trial.

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment:

(a) awarding the United States treble damages sustained by it for each of the false claims;

(b) awarding the United States a civil penalty of $11,000 for each of the false claims and statements;

(c) awarding Relator 30% of the proceeds of this action and any alternate remedy or the settlement of any such claim;

(d) awarding Relator special damages resulting from the retaliation pursuant to 31 U.S.C. § 3730(h);

(e) awarding Relator his litigation costs and reasonable attorney's fees; and

(f) granting such other relief as the Court may deem just and proper.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

1

## **DEMAND FOR JURY**

2 Pursuant to Fed. R. Civ. P. 38, the Relator hereby demands a trial by jury.

3

4

5 Respectfully Submitted,

6 DATED: February 5, 2016

**KELLER GROVER LLP**

7

8 By:

9 KATHLEEN R. SCANLAN
JEFFREY F. KELLER

10 Attorneys for Relator

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

COMPLAINT                                    13                          CASE NO:

## CERTIFICATE OF SERVICE

I, NATALYA ALTMAN, am employed in the County of San Francisco, State of California. I am over the age of eighteen and not a party to the within action. My business address is 1965 Market Street, San Francisco, California 94103. On **February 5, 2016**, I served the foregoing document(s):

### COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT

### NOTICE OF INTERESTED PARTIES

on the interested party(ies) as set forth below:

Loretta Lynch
Attorney General
U.S Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

David K. Barrett
Assistant U.S. Attorney
Chief, Civil Fraud Section
Central District of California
Federal Building Suite 7516
300 North Los Angeles Street
Los Angeles, CA 90012

***Attorneys for United States***                    ***Attorneys for United States***

| | |
|---|---|
| ☒ | **(BY UNITED STATES MAIL)** I sealed the envelope(s), with postage thereon fully prepaid, and on the date below, following ordinary business practices, I placed it for collection and mailing in the United States Postal Service, in San Francisco, California. |
| ☐ | **(BY FEDERAL EXPRESS – PRIORITY OVERNIGHT MAIL)** I placed a true copy in a sealed envelope addressed as indicated above this date. I am familiar with the firm's practice of collection and processing correspondence for Federal Express delivery. It is deposited in a Federal Express depository on that same day in the ordinary course of business for delivery to the parties above the next business day. |
| ☐ | **(BY ELECTRONIC SERVICE)** by electronically mailing a true and correct copy in PDF format through our electronic mail system to the email address(es) set forth above, or as stated on the attached service list per agreement between the parties. |
| ☐ | **(BY FACSIMILE)** By transmitting to a facsimile machine maintained by the recipient at the facsimile machine telephone number as last given by that person. |
| ☐ | **(BY PERSONAL SERVICE)** I caused such envelope(s) to be delivered by |

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

CERTIFICATE OF SERVICE                    14                    CASE NO:

| | |
|---|---|
| | hand this date to the offices of the addressee(s). |
| ☒ | (FEDERAL)  I declare under penalty of perjury under the laws of the United States that the above is true and correct. |

Executed on **February 5, 2016**, at San Francisco, California.

N. Altm

NATALYA ALTMAN

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305; Fax 415.543.7861

CERTIFICATE OF SERVICE          15          CASE NO:

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| **I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ ) | **DEFENDANTS** ( Check box if you are representing yourself ☐ ) |
|---|---|
| UNITED STATES ex rel. LLORENS PEMBROOK | PROVIDENCE HEALTH & SERVICES, et al |

| **(b)** County of Residence of First Listed Plaintiff    Los Angeles | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |

| **(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. | Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. |
|---|---|
| KELLER GROVER LLP<br>1965 MARKET STREET<br>SAN FRANCISCO, CA 94103 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- ☒ 1. U.S. Government Plaintiff
- ☐ 2. U.S. Government Defendant
- ☐ 3. Federal Question (U.S. Government Not a Party)
- ☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

- ☒ 1. Original Proceeding
- ☐ 2. Removed from State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Reinstated or Reopened
- ☐ 5. Transferred from Another District (Specify)
- ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☐ No    ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
31 U.S.C. 3729-33; False Claims Act - healthcare fraud

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☒ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| **FOR OFFICE USE ONLY:** Case Number: | CV16-00835 |
|---|---|

CV-71 (10/14)   |   CIVIL COVER SHEET   |   Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| [ ] Yes   [x] No<br><br>If "no," skip to Question B.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | [ ] Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
|  | [ ] Orange | Southern |
|  | [ ] Riverside or San Bernardino | Eastern |

**QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action?**

[x] Yes   [ ] No

If "no," skip to Question C.  If "yes," answer Question B.1, at right.

**B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?

*check one of the boxes to the right* →

- [ ] YES.  Your case will initially be assigned to the Southern Division.  Enter "Southern" in response to Question E, below, and continue from there.
- [x] NO.  Continue to Question B.2.

**B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)

*check one of the boxes to the right* →

- [ ] YES.  Your case will initially be assigned to the Eastern Division.  Enter "Eastern" in response to Question E, below, and continue from there.
- [x] NO.  Your case will initially be assigned to the Western Division.  Enter "Western" in response to Question E, below, and continue from there.

**QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action?**

[ ] Yes   [x] No

If "no," skip to Question D.  If "yes," answer Question C.1, at right.

**C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?

*check one of the boxes to the right* →

- [ ] YES.  Your case will initially be assigned to the Southern Division.  Enter "Southern" in response to Question E, below, and continue from there.
- [ ] NO.  Continue to Question C.2.

**C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)

*check one of the boxes to the right* →

- [ ] YES.  Your case will initially be assigned to the Eastern Division.  Enter "Eastern" in response to Question E, below, and continue from there.
- [ ] NO.  Your case will initially be assigned to the Western Division.  Enter "Western" in response to Question E, below, and continue from there.

| QUESTION D:  Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside.  (Check up to two boxes, or leave blank if none of these choices apply.) | [ ] | [ ] | [x] |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside.  (Check up to two boxes, or leave blank if none of these choices apply.) | [ ] | [ ] | [x] |

**D.1.  Is there at least one answer in Column A?**

[ ] Yes   [x] No

If "yes," your case will initially be assigned to the
SOUTHERN DIVISION.

Enter "Southern" in response to Question E,  below, and continue from there.

If "no," go to question D2 to the right.  →

**D.2.  Is there at least one answer in Column B?**

[ ] Yes   [x] No

If "yes," your case will initially be assigned to the
EASTERN DIVISION.

Enter "Eastern" in response to Question E,  below.

If "no," your case will be assigned to the WESTERN DIVISION.

Enter "Western" in response to Question E, below.  ↓

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: → | WESTERN |

**QUESTION F: Northern Counties?**

Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties?   [ ] Yes   [x] No

CV-71 (10/14)                      CIVIL COVER SHEET                      Page 2 of 3

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court?**      ☒ NO    ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court?**      ☒ NO    ☐ YES

If yes, list case number(s): _____

**Civil cases** are related when they (check all that apply):

☐  A. Arise from the same or a closely related transaction, happening, or event;

☐  B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐  C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐  A. Arise from the same or a closely related transaction, happening, or event;

☐  B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐  C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** _____   DATE: 02/05/16

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |